# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00230-MR

| | |
|---|---|
| ERika TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF DECISION AND ORDER** |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 13] and the Defendant's Motion for Summary Judgment [Doc. 15].

## I. BACKGROUND

On March 16, 2017, the Plaintiff, Erika Taylor ("Plaintiff"), filed an application for supplemental security income under Title XVI of the Social Security Act (the "Act"), alleging an onset date of February 15, 2017.[1] [Transcript ("T.") at 74-75]. The Plaintiff's claims were initially denied on

---

[1] Notably, the Plaintiff filed her application for benefits before March 27, 2017, when the regulations controlling the weighing of medical opinion evidence changed. [See Doc. 14 at 5].

August 2, 2017, [id. at 107], and again denied upon reconsideration on November 20, 2017, [id. at 114]. On the Plaintiff's request, a hearing was held on February 7, 2019 before an Administrative Law Judge ("ALJ"). [Id. at 10]. On May 22, 2019, the ALJ issued a written decision denying the Plaintiff benefits. [Id. at 7].

On June 25, 2020, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 1]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial

2

evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019) (internal quotation marks omitted); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ

3

applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanation." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied

4

regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the claimant can still perform his or her

past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Mascio, 780 F.3d at 635; see also 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner succeeds in shouldering his burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since March 16, 2017, the date her application for benefits was filed. [T. at 12]. At step two, the ALJ found that the Plaintiff had the following severe impairments: "borderline intellectual functioning, bipolar disorder, posttraumatic stress disorder, specific learning disorders (math, written expression), and morbid obesity." [Id.]. At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of

6

Case 1:20-cv-00230-MR   Document 18   Filed 07/25/22   Page 6 of 19

impairments that meets or medically equals the Listings. [Id. at 13]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, had the RFC:

> [T]o perform sedentary work as defined in 20 C.F.R. 416.967(a), except can sit without interruption for no more than about 30 minutes, followed by an opportunity to stand and stretch briefly (1 to 2 minutes), without leaving the work station and she can stand and/or walk without interruption for a combined uninterrupted total of no more than about 15 minutes, followed by an opportunity to sit for up to 5 minutes. The claimant can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs: and never climb ladders, ropes, or scaffolds. The claimant can handle, finger, feel, and operate hand controls frequently (but not continuously), bilaterally. The claimant can never operate a motor vehicle as an occupational requirement, nor work safely around extraordinary work hazards, such as unprotected heights or dangerous machinery (having exposed moving parts or requiring alertness and/or agility in order to evade). The claimant can tolerate no more than occasional exposure to high humidity or wetness. The claimant remains able to perform the mental demands of work that requires her to understand, remember, and carry out instructions consistent with occupations that can be learned in up to 30 days, and performing short-cycle, repetitive tasks with minimal change in environment. The claimant requires a setting that is goal-oriented versus requiring that she maintain a specified pace consistently throughout a workday. She can tolerate occasional contact, but never interaction, with the public, and she remains able to interact appropriately with supervisors and co-workers, provided contact after the completion of the initial orientation and training period is neither frequent nor prolonged.

[Id. at 16].

At step four, the ALJ determined that the Plaintiff did not have past relevant work. [Id. at 24]. At step five, the ALJ concluded that based on the Plaintiff's age, education, work experience, and RFC, the Plaintiff was able to perform jobs existing in significant numbers in the national economy, including assembler, inspector, and general production worker. [Id.]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Act from March 16, 2017, the date her application was filed. [Id. at 25].

## V. DISCUSSION[2]

As one of her assignments of error, the Plaintiff argues that the ALJ "discounted the opinion of examining psychologist Dr. Fiore but did not explain her conclusion and selectively relied on the evidence." [Doc. 14 at 8]. Therefore, the Plaintiff asserts that substantial evidence does not support the ALJ's discounting of Dr. Fiore's opinion. [Id.].

The RFC represents "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC, id. § 404.1546(c), based on "all the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio, 780 F.3d at 636 (citing SSR 96-8p).

The ALJ must address each "medical opinion" in the claimant's record and include a weight given to each opinion regardless of the source of the opinion. Woods, 888 F.3d at 695. Medical opinions are statements from physicians and psychologists "that reflect judgments about the nature and severity of [an individual's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [the individual] can still do despite [the] impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 416.927. The statements may be submitted by acceptable medical sources, including treating sources and consultative examiners. SSR 96-5.

When the ALJ is evaluating and weighing medical opinions the ALJ should consider multiple factors, including (1) the examining relationship; (2) the treatment relationship, including the length of the relationship, the

frequency of examination, and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6) ("[W]e consider all of the following factors in deciding the weight we give to any medical opinion."). The regulations require "ALJs to consider *all* of the enumerated factors in deciding what weight to give to a medical opinion." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 107 n.16 (4th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)) (emphasis in original).

Dr. Fiore is a consulting examiner and therefore his opinion is a "medical opinion" which the ALJ must properly weigh. 20 C.F.R. §§ 404.1527(c), 416.927(c). Dr. Fiore examined the Plaintiff once on July 10, 2017, performed a psychological evaluation, and provided an opinion as to the Plaintiff's ability to perform certain tasks. [T. at 383]. Dr. Fiore concluded that the Plaintiff was "functioning in the lower borderline range of intelligence" and was "not capable of functioning effectively in a job requiring the ability to take messages, complete forms or perform occupational mathematics." [Id. at 388]. Dr. Fiore also stated that the Plaintiff's "reading abilities [were] limited to a second grade level and would seriously interfere with her ability to understand written materials in a work place setting," and that the Plaintiff

had "significant difficulty with working memory, auditory memory and visual memory." [Id.]. Dr. Fiore further concluded that:

> [The Plaintiff] will have moderate to severe difficulty understanding, retaining and following simple work related instructions. She will have severe to extreme difficulty understanding, retaining and carrying out complex work related instructions. Her attention span is impaired and will severely interfere with her ability to perform repetitive tasks for sustained periods of time. She will likely have severe problems relating to fellow workers and supervisors due to her emotional conditions and limited coping and intellectual abilities. Her tolerance for emotional stress is poor and would severely interfere with her work performance. She appears capable of managing her financial affairs with occasional assistance.

[Id. at 389].

The ALJ gave "little weight" to Dr. Fiore's assessment of the Plaintiff. [Id. at 22]. Regarding, Dr. Fiore's assessment, the ALJ stated that:

> [Dr. Fiore's] findings represent a snapshot of the claimant's functioning, and are inconsistent with the longitudinal medical record (Ex. 7F). Specifically, his findings of moderate to severe difficulty in performing simple work, severe problems relating to coworkers and supervisors, and severe interference of work performance due to poor emotional stress tolerance are an overstatement of the evidence of record as a whole, and are inconsistent with the claimant's IQ scores in the BIF range, school records showing As and Bs in high school and higher academic achievement on 8th grade testing, minimal mental health treatment and significant improvement with medication management, report of zero to moderate

11

> symptoms of anxiety and depression to her PCP, and generally unremarkable mental status examinations even around the time of her crisis evaluation, as detailed above (Ex. 7F; 2F; 3F; 8F; 9F; 12F; 13F). It also is inconsistent with the claimant's generally intact activities of daily living showing significantly higher cognitive, social, and adaptive functioning than that suggested by his report, including living independently with her husband who is disabled; caring for her pet cat; preparing at least simple meals and learning to eat a healthier diet; intact knowledge of her medication, dosages, and purpose; shopping; going to the beauty shop with her grandmother; maintenance of close relationships with her husband and mother; adequate relationships with her treatment providers despite her purported doctor phobia; cleaning; walking; engaging in some hobbies, including crocheting, coloring, and scrapbooking; and using a computer.

[Id. at 22-23].

"There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). However, an ALJ still must "consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Arakas, 983 F.3d at 98 (quoting Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017)).

12

Case 1:20-cv-00230-MR    Document 18    Filed 07/25/22    Page 12 of 19

Here, the ALJ concluded that Dr. Fiore's assessment was inconsistent with the evidence in the record, which showed "minimal mental health treatment and significant improvement with medication management, report of zero to moderate symptoms of anxiety and depression to [the Plaintiff's primary care physician], and generally unremarkable mental status examinations even around the time of [the Plaintiff's] crisis evaluation." [T. at 23]. Elsewhere in the RFC assessment, the ALJ stated that the Plaintiff:

> [T]estified that she feels anxious, particularly when out in public, as she worries that something bad will happen, that her anxiety gets bad when she is in the presence of 4-5+ people, and that she experiences panic attacks. The [Plaintiff] also described that she has PTSD, and that certain triggers can bring back memories. With respect to her bipolar disorder, the claimant testified that she experiences depression, but that her moods are stable with medication, which is consistent with her treating records.

[Id. at 17].

The ALJ's RFC assessment also noted that the Plaintiff received crisis services in April 2017 related to her bipolar disorder and PTSD. [Id. at 19]. At that time, the ALJ noted that the Plaintiff presented with "very high levels of depressive, anxious, and trauma-related symptomology, with suicidal ideation and plan, self-harming behaviors, anxiety, agoraphobia, panic, emotional lability, paranoia, nightmares, and report of seeing spiders on the ceiling." [Id.]. The ALJ further stated that "[a]t her initial psychiatric

13

assessment later that same month, the claimant had normal hygiene and grooming, normal speech and language, normal thought processes, intact abstract reasoning, intact computation, no evidence of psychosis, intact fund of knowledge, and was a good historian despite her self-report of 'so-so' recent and remote memory." [Id.]. The ALJ stated that the Plaintiff was "pleasant and cooperative, and maintained good eye contact" at her psychological evaluation with Dr. Fiore, "despite her reported social anxiety and panic, and her phobia of doctors." [Id. at 19-20].

The ALJ further explained that the Plaintiff's depressive and manic symptoms improved with medication and that "[h]er mental status examinations have also been generally unremarkable overall, with normal appearance and dress, normal mood and affect, unremarkable speech and thought, and she has been described at times as having normal insight and judgment." [Id. at 20]. The ALJ also stated that, in August 2018, the Plaintiff reported "no thoughts of self-harm since starting Zyprexa." [Id.]. The ALJ then noted that, in November 2018, the Plaintiff returned to RHA Health Services for mental health treatment and that "[s]he reported intermittent depression only, and while she did report ongoing daily panic attacks and flashbacks, it is notable that she did not report any ongoing significant symptomatology to her PCP, nor have any of her panic attacks been

14

witnessed by a provider, despite her reports of heightened anxiety outside of her home and her phobia of doctors." [Id.].

Despite citing numerous portions of the record, the ALJ nevertheless failed to discuss other evidence in the record that would tend to demonstrate the Plaintiff's ongoing symptoms of mental illness.  For example, the ALJ omits from the RFC assessment, including the ALJ's conclusion regarding Dr. Fiore's assessment, any mention that the Plaintiff received crisis services in April 2017 specifically because the Plaintiff attempted suicide twice in the preceding five weeks.  [See id. at 358, 364].  Further, although the ALJ stated that the Plaintiff "had normal hygiene and grooming, normal speech and language, normal thought processes, intact abstract reasoning, intact computation, no evidence of psychosis, intact fund of knowledge, and was a good historian" at her initial psychiatric assessment later that month, [id. at 19], the record indicates that the Plaintiff also reported experiencing many of the same or similar symptoms that she presented with at the time of her crisis evaluation, including depression, daily crying spells, suicidal thoughts and thoughts of self-harm, manic episodes, paranoia, visual hallucinations, and anxiety, [id. at 364, 367].

Moreover, the ALJ's RFC assessment stated that the Plaintiff's symptoms improved with medication, [id. at 20, 23], and that her "mental

15

status examinations have also been generally unremarkable overall," [id. at 20, 23]. However, the ALJ did not discuss other evidence in the record tending to suggest that the Plaintiff's symptoms waxed and waned. For instance, the ALJ did not discuss evidence in the record indicating that the Plaintiff reported ongoing paranoia in June 2017, [id. at 407]; ongoing visual and auditory hallucinations at her psychological evaluation with Dr. Fiore in July 2017, [id. at 385]; ongoing paranoia, visual hallucinations, panic attacks, and anxiety in September 2017, [id. at 394]; increased anxiety in February 2018, [id. at 565]; and increased anxiety when she could not afford her anxiety medications in September 2018, [id. at 520].

Further, although the ALJ stated that the Plaintiff reported experiencing "intermittent depression only" and "ongoing daily panic attacks" when she returned to RHA Health Services in November 2018, [id. at 20], the ALJ failed to cite evidence that the Plaintiff reported experiencing depressive symptoms as frequently as "a couple days a week" and panic attacks as frequently as three to four times a day as well as suicidal thoughts and visual hallucinations, [id. at 479-80]. While the Plaintiff reported that "her bipolar disorder symptoms [were] improving," she also reported that "she [was] still having a lot of symptoms." [Id. at 491]. The ALJ's RFC assessment simply

16

does not discuss certain evidence from the record regarding the nature and frequency of all of the Plaintiff's symptoms.

Where the ALJ did discuss the Plaintiff's reported anxiety, paranoia, and doctor phobia, the ALJ also stated that the Plaintiff still "presented as pleasant and cooperative, and maintained good eye contact," that she failed to report any "significant symptomology" to her primary care provider, and that no provider has witnessed her panic attacks. [Id. at 19-20]. However, the Plaintiff did, at times, report experiencing increased anxiety to her primary care provider, [id. at 520, 565], and the ALJ fails to explain how the absence of panic attacks specifically during medical appointments is inconsistent with the Plaintiff's reports of daily anxiety attacks or Dr. Fiore's opinion regarding her ability to perform certain tasks.

As the ALJ's RFC assessment does not cite to any particular information regarding the Plaintiff's symptoms, the Court is "left to guess" about whether the ALJ considered this evidence when determining the weight that should be afforded to Dr. Fiore's assessment, and if it was considered, how it was considered. Mascio, 780 F.3d at 637. Furthermore, "[b]ecause symptoms of mental illness may wax and wane over the course of treatment, the fact that [the plaintiff]" did not consistently exhibit certain symptoms is "not inconsistent with the conclusion that she is unable to work."

Testamark v. Berryhill, 736 Fed. App'x 395, 398-99 (4th Cir. 2018). Thus, the fact that the Plaintiff's symptoms were not present at all times does not negate the relevance of numerous occasions when the Plaintiff demonstrated symptoms of mental illness.

Because the Court cannot determine whether the ALJ properly evaluated the opinion of Dr. Fiore, the Court cannot say that the Plaintiff's RFC was properly addressed or that the ALJ's ultimate decision was supported by substantial evidence. Monroe, 826 F.3d at 191. Remand, is, therefore, necessary to allow the ALJ to consider Dr. Fiore's medical opinion in light of the factors set forth in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). See Dowling v. Comm'r, Soc. Sec. Admin., 986 F.3d 377, 386 (4th Cir. 2021).

## VI. CONCLUSION

Because this Court lacks an adequate record of the basis for the ALJ's evaluation of Dr. Fiore's medical opinion, it cannot conduct a meaningful review of the ALJ's ruling. See Radford, 734 F.3d at 295. On remand, the ALJ's decision should include a narrative discussion of the evidence, as required by SSR 96-8p, explaining how the ALJ reconciled that evidence (both supportive and contradictory) to the ALJ's ultimate conclusions. In light

of this decision, the Plaintiff's other assignments of error need not be addressed at this time but may be addressed on remand.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 13] is **GRANTED,** and the Defendant's Motion for Summary Judgment [Doc. 15] is **DENIED.** Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: July 24, 2022

Martin Reidinger
Chief United States District Judge